RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0202-16T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF B.R., SVP-753-16.

_______________________________

 Submitted August 30, 2017 – Decided September 12, 2017

 Before Judges Rothstadt and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Docket No.
 SVP-753-16.

 Joseph E. Krakora, Public Defender, attorney
 for appellant B.R. (Susan Remis Silver,
 Assistant Deputy Public Defender, of counsel
 and on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent State of New Jersey
 (Melissa H. Raksa, Assistant Attorney General,
 of counsel; Stephen Slocum, Deputy Attorney
 General, on the brief).

PER CURIAM

 B.R. appeals from a judgment entered by the Law Division

committing him to the Special Treatment Unit (STU) pursuant to the

Sexually Violent Predators Act (SVPA), N.J.S.A. 30:4-27.24 to

27.38. He contends there was insufficient evidence supporting the

court's determination that he suffered from a mental abnormality
or personality disorder and presents a high risk of reoffending,

the court erred by shifting the burden of proof to him during the

commitment hearing, and the State failed to sustain its burden of

proof. We disagree and affirm.

 Based on B.R.'s exposure of his penis to a ten-year-old boy

and his request that the child perform fellatio on him, B.R. was

convicted in January 1985 of child abuse and sentenced to probation

and participation in counseling. Ten months later, he was

convicted of lewdness and received a suspended sentence with

probation after exposing himself to another ten-year-old boy.

 In 2001, B.R. approached a nine-year-old boy in a casino

video arcade and placed his penis on the boy's shoulder or neck.

He pleaded guilty to second-degree sexual assault, N.J.S.A. 2C:14-

2(b), and was sentenced to a five-year custodial sentence to be

served at the Adult Diagnostic and Treatment Center (ADTC),

community supervision for life, N.J.S.A. 2C:43-6.4, and compliance

with the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23. On

November 6, 2006, B.R. was released on parole.

 In August 2008, B.R. pressed his groin against the back of a

six-year old boy in a casino arcade. B.R. was charged, and

subsequently pleaded guilty to second-degree sexual assault,

N.J.S.A. 2C:14-2(b). He was sentenced to an eight-year custodial

term subject to the requirements of the No Early Release Act,

 2 A-0202-16T5
N.J.S.A. 2C:43-7.2, compliance with Megan's Law, N.J.S.A. 2C:7-1

to -23, and parole supervision for life, N.J.S.A. 2C:43-6.4. The

court ordered that B.R. serve his sentence at the ADTC.

 In August 2016, the State requested B.R.'s civil commitment

pursuant to the SVPA. The State arranged for Dr. Roger Harris, a

psychiatrist, and Dr. Debra Roquet, a STU psychologist, to evaluate

B.R., but B.R. refused to meet with them. Dr. Harris and Dr.

Roquet conducted forensic evaluations of B.R. based on his ADTC

records and other records related to his offense history.

 Dr. Harris and Dr. Roquet testified at the final commitment

hearing. They recognized that reports from B.R.'s prior treatment

included favorable information, but they separately and

independently determined B.R. suffered from a mental abnormality

or personality disorder, and presented a high likelihood of

reoffending.

 Dr. Harris testified B.R. suffered from pedophilic disorder.

He based the diagnosis on B.R.'s history of sexual crimes and

offenses committed against young boys, his determination that B.R.

compulsively repeated deviant behavior, and B.R.'s reporting of

years of sexual fantasies involving boys between the ages of six

and twelve.

 Dr. Harris further opined that the pedophilic disorder

predisposed B.R. to engage in acts of sexual violence and that

 3 A-0202-16T5
B.R. demonstrated an inability to control his impulses. Dr. Harris

noted B.R. had been in treatment when he committed his criminal

offenses, committed the criminal offenses following prior

convictions for sexually deviant conduct toward young boys, and

committed the crimes in public places where there was a high risk

of being caught. Dr. Harris observed that defendant suffered from

some traits of antisocial personality disorder including

impulsivity, which contributed to B.R.'s inability to "override

his sexual desire" for young boys.

 In part, Dr. Harris's opinion was also based on his use of

the Static-99 assessment instrument.1 According to Dr. Harris,

B.R.'s score of seven on the assessment showed B.R. had a high

risk of reoffending.

 Dr. Harris testified that B.R.'s disorders would not

spontaneously remit. He stated that although the records included

favorable information concerning B.R.'s prior treatment, B.R.'s

treatment did not effectively mitigate his risk of reoffending.

Dr. Harris explained that B.R. was in the "high-risk category of

men who sexually reoffend when released." Based on all of the

information he considered, he opined that B.R. presented a current

1
 The Static-99 is a ten item actuarial assessment instrument
utilized to assess male sex offenders' risk of re-offense.
Static99/Static99R, Static99 Clearinghouse,
http://www.static99.org (last visited August 31, 2017).

 4 A-0202-16T5
risk of a high likelihood of reoffending if placed in a setting

less restrictive than the STU.

 Dr. Roquet testified that she conducted a forensic evaluation

of B.R. based on the ADTC treatment records and other records

related to B.R.'s prior offenses. She explained that B.R. admitted

he was sexually attracted to pre-pubescent boys and that there had

been occasions he could not resist his impulse to act on his

attraction. She testified B.R.'s attraction to young boys was

"powerful" and "behaviorally compelling" and observed that B.R.'s

history showed an escalation from noncontact to physical contact

offenses.

 Dr. Roquet acknowledged the ADTC records showed B.R. did well

in treatment prior to his release in 2006 and again in 2016. She

noted, however, that B.R. reoffended following the completion of

his ADTC treatment in 2006, and while he was serving community

supervision for life. She opined that B.R.'s ostensible success

in treatment did not mitigate his risk of reoffending because of

his history, the power of his arousal for young boys, and his

inability to control his impulses.

 Dr. Roquet diagnosed B.R. with pedophilic disorder and

substance abuse issues with cocaine and cannabis that are in

remission. She testified that B.R.'s age, fifty-one, is the primary

factor mitigating against his reoffending. She concluded,

 5 A-0202-16T5
however, that based on B.R.'s history, powerful pedophilic

arousal, substance abuse issues, and the failure of treatment to

effectively mitigate against the risk of reoffending, it was highly

likely that B.R. would reoffend if he was released. Dr. Roquet

also relied upon B.R.'s score of seven on the Static-99 assessment

instrument as support for her conclusion B.R. represented a high

risk of reoffending.

 B.R. did not present any witnesses. The court found Dr.

Harris and Dr. Roquet were credible witnesses. Based on their

testimony, the court determined the State clearly and convincingly

proved B.R. suffers from a mental abnormality and personality

disorder, pedophilia, that does not spontaneously remit, he is

predisposed to sexual violence, he has serious difficulty

controlling his violent behavior, and presently is highly likely

to reoffend. The court entered a civil commitment order in

accordance with the SVPA, and B.R. appealed.

 B.R. makes the following arguments:

 POINT I

 THE COMMITMENT COURT COMMITTED REVERSABLE
 LEGAL ERROR WHEN IT SHIFTED THE BURDEN OF
 PROOF TO B.R. AND HELD THAT UNLESS B.R.
 SUBMITTED TO AN INTERVIEW WITH THE STATE
 DOCTORS AND CONVINCED THE COMMITMENT COURT
 THAT HE WAS NOT HIGHLY LIKELY TO REOFFEND,
 THEN THE COURT HAD NO CHOICE BUT TO COMMIT
 HIM.

 6 A-0202-16T5
 POINT II

 REVERSAL IS REQUIRED BECAUSE THE STATE
 INTRODUCED NO EVIDENCE THAT B.R. HAS A CURRENT
 MENTAL ABNORMALITY OR PERSONALITY DISORDER
 THAT MAKES HIM A CURRENT RISK OF BEING HIGHLY
 LIKELY TO SEXUALLY REOFFEND.

 POINT III

 [B.R.'S] COMMITMENT ORDER MUST BE REVERSED
 BECAUSE THE STATE WITNESSES RELIED SOLELY ON
 DOCUMENTS THAT THE STATE NEVER ENTERED INTO
 EVIDENCE. AS A RESULT, THE STATE FAILED TO
 MEET ITS BURDEN BY CLEAR AND CONVINCING
 EVIDENCE THAT B.R. REQUIRED CIVIL COMMITMENT
 UNDER THE SVPA.

 The scope of our review of a commitment determination under

the SVPA is "extremely narrow." In re Civil Commitment of R.F.,

217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58

(1996)). "The judges who hear SVPA cases generally are

'specialists' and 'their expertise in the subject' is entitled to

'special deference.'" Ibid.

 We give deference to trial judges' findings of fact because

"they have the 'opportunity to hear and see the witnesses and to

have the "feel" of the case, which a reviewing court cannot

enjoy.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161

(1964)). We will "not overturn a trial court's findings because

it 'might have reached a different conclusion were it the trial

tribunal' or because 'the trial court decided all evidence or

 7 A-0202-16T5
inference conflicts in favor of one side' in a close case." Ibid.

(quoting Johnson, supra, 42 N.J. at 162).

 "So long as the trial court's findings are supported by

'sufficient credible evidence present in the record,' those

findings should not be disturbed." Ibid. (quoting Johnson, supra,

42 N.J. at 162). We "should not modify a trial court's

determination either to commit or release an individual unless

'the record reveals a clear mistake.'" Ibid. (quoting D.C., supra,

146 N.J. at 58).

 Under the SVPA, "[i]f the court finds by clear and convincing

evidence that the person needs continued involuntary commitment

as a sexually violent predator, it shall issue an order authorizing

the involuntary commitment of the person to a facility designated

for the custody, care and treatment of sexually violent predators."

N.J.S.A. 30:4-27.32(a). To classify a person as a sexually violent

predator, the State must establish the following:

 (1) that the individual has been convicted of
 a sexually violent offense; (2) that he [or
 she] suffers from a mental abnormality or
 personality disorder; and (3) that as a result
 of his [or her] psychiatric abnormality or
 disorder, "it is highly likely that the
 individual will not control his or her
 sexually violent behavior and will reoffend.

 [R.F., supra, 217 N.J. at 173 (citations
 omitted) (quoting In re Commitment of W.Z.,
 173 N.J. 109, 130 (2002)); see also N.J.S.A.

 8 A-0202-16T5
 30:4-27.26 (enumerating the three
 requirements).]

 The SVPA defines a "[m]ental abnormality," as a "condition

that affects a person's emotional, cognitive or volitional

capacity in a manner that predisposes that person to commit acts

of sexual violence." N.J.S.A. 30:4-27.26. Although the SVPA does

not define "personality disorder," our Supreme Court has held that

it is sufficient if the offender has a mental condition that

adversely affects "an individual's ability to control his or her

sexually harmful conduct." See W.Z., supra, 173 N.J. at 127;

N.J.S.A. 30:4-27.26.

 We first address B.R.'s contention that there was

insufficient evidence supporting the court's determination that

he suffered from a current mental abnormality or personality

disorder resulting in a current risk that he is highly likely to

sexually reoffend. B.R. argues the State did not present evidence

showing his "current mental state and present state of

dangerousness and therefore did not establish that he will engage

in "sexually violent behavior and will reoffend . . . in the

foreseeable future." See W.Z., supra, 173 N.J. at 132-33 (finding

commitment under the SVPA must be based on the offender's "present

serious difficulty with control over dangerous sexual behavior").

B.R. argues Dr. Harris, Dr. Roquet and the court erroneously

 9 A-0202-16T5
ignored his success in treatment at the ADTC and, as a result, the

court's finding that he currently presents a high likelihood of

reoffending is not supported by competent evidence.

 B.R. relies on In re Commitment of G.G.N., 372 N.J. Super.

42, 58 (App. Div. 2004), where we found the State's experts'

testimony was insufficient to sustain a commitment order. The

experts in G.G.N. did not consider the offender's fourteen years

of treatment while in ADTC and "came close to testifying that in

their view, commission of the original offenses, twenty-one years

earlier, was sufficient for SVP[A] commitment." Ibid. Here, Dr.

Harris and Dr. Roquet did not ignore B.R.'s long-term treatment

or the favorable reports about his treatment, and they did not

rely exclusively on the commission of B.R.'s prior offenses to

support their conclusions.

 The doctors testified directly about B.R.'s treatment and

favorable reports, but offered opinions discounting the mitigating

effects of the treatment on B.R.'s risk of reoffending. They

explained B.R. underwent treatment after his first criminal

offense and continued treatment after being released in 2006, but

that he nevertheless could not resist the impulse to again sexually

assault a young boy in a public place. They relied on B.R.'s

admitted powerful compulsion to sexually assault young boys and

concluded that his impulsivity and substance issues result in an

 10 A-0202-16T5
inability to control his compulsion. They each utilized the

Static-99 assessment instrument and separately graded B.R. at

level seven, which supported their conclusions that B.R. was

currently highly likely to sexually reoffend in the future. We

therefore discern no basis in the record to reverse the court's

findings and conclusions.

 We find B.R.'s remaining arguments to be of insufficient

merit to warrant extensive discussion in a written opinion. R.

2:11-3(e)(1)(E). We add only the following comments.

 We are not persuaded by B.R.'s contention that the court

improperly shifted the burden of proof to him. B.R. argues the

court shifted the burden by observing that he refused to meet with

Dr. Harris and Dr. Roquet and by stating that had he met with

them, he may have provided information supporting a finding that

his treatment mitigated his risk of reoffending.

 It is not disputed that the State had the burden of proving

by clear and convincing evidence each of the necessary statutory

elements for a civil commitment under the SVPA. In re Civil

Commitment of D.Y., 218 N.J. 359, 380 (2014). The court found

that based on the testimony of Dr. Harris and Dr. Roquet, the

State satisfied that burden here.

 The court's reference to B.R.'s refusal to speak to Dr. Harris

and Dr. Roquet did not alter or shift the burden. B.R. did not

 11 A-0202-16T5
have a right to refuse to speak with the doctors and he cannot

benefit from his refusal to do so. In re Civil Commitment of

A.H.B., 386 N.J. Super. 16, 29 (App. Div.), certif. denied, 188

N.J. 492 (2006). Nevertheless, the court did not indicate that

it held B.R.'s refusal against him. To the contrary, when the

court discussed B.R.'s refusal to speak with the doctors, it said

B.R. had no obligation to speak with them.

 The court never said or suggested that B.R. had the burden

of proving anything related to his commitment and the court never

relied upon B.R.'s refusal to speak with the doctors as a basis

for its finding that the State met its burden. The court noted

only that B.R.'s decision deprived the doctors of an opportunity

to obtain information that might have changed their opinions about

the effectiveness of B.R.'s treatment. In any event, the record

shows that it was the doctors' testimony, and not B.R.'s refusal

to speak with them, that provided the clear and convincing evidence

upon which the court relied for its findings and conclusions.

 We also reject B.R.'s contention that the court's findings

cannot be sustained because the reports and records relied upon

by Dr. Harris and Dr. Roquet were not admitted in evidence. The

court based its findings and conclusions upon the testimony of the

witnesses, who testified in detail concerning the various

documents they reviewed and relied upon to form their respective

 12 A-0202-16T5
opinions. Also, there was no objection to the testimony based on

the failure to admit the documents in evidence.

 Affirmed.

 13 A-0202-16T5